# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| J.D., *et al.*, | : | Case No. 3:17-cv-143 |
| | : | |
| Plaintiffs, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| GRAHAM LOCAL SCHOOL DISTRICT | : | |
| BOARD OF EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

___

**ENTRY AND ORDER DENYING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER (DOC. 4) AND GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO FILE A BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS (DOC. 9)**
___

This case is before the Court on Plaintiffs' Motion for Temporary Restraining Order (Doc. 4). Plaintiff J.D. is the 15-year-old adopted son of Plaintiffs B.D. (his father) and D.D. (his mother). (Doc. 1 at ¶ 11.) J.D. is deaf, autistic, and has a history of violent and destructive behavior. (*Id.* at ¶ 13.) Due to his disabilities, J.D.'s parents entered into an agreement with Defendant Graham Local School District Board of Education (the "School District")—the school district in which they resided—that J.D. should be placed in a highly specialized school for deaf children in Pennsylvania called Pressley Ridge. (*Id.* at ¶ 15-17.) J.D. has stayed at Pressley Ridge since September 2015. (*Id.* at ¶ 17.)

In September 2016, J.D.'s parents moved to Nicaragua "to pursue a lifelong humanitarian calling to help individuals in disadvantaged countries learn survival and self-sufficiency through bee-keeping." (*Id.* at ¶ 18.) J.D.'s parents brought their eight biological children with them to Nicaragua, but were unable to bring J.D. due to his special needs. (*Id.* at ¶ 19.) J.D.'s parents

therefore had his maternal grandmother, Plaintiff L.H., execute a Grandparent Power of Attorney ("GPOA") so that she could take responsibility for J.D.'s care. (*Id.* at ¶ 20.)

Since L.H. resides within the School District's boundaries, J.D.'s parents believed that the GPOA also entitled J.D. to continue his education at Pressley Ridge. The School District disagreed, however, and filed a declaratory judgment action in Juvenile Court to invalidate the GPOA. (*Id.* at ¶ 25.) The School District also refused to continue paying for J.D.'s placement at Pressley Ridge on the grounds that he no longer resided within the district. (*Id.* at ¶ 30.) Pressley Ridge has notified L.H. that if it does not receive payment for J.D.'s placement by May 5, 2017, it may discharge J.D. into her care. (Doc. 4-3 at ¶ 12; Doc. 4-4.)

Plaintiffs move for a temporary restraining order that would require the School District to pay Pressley Ridge the money that it is owed for J.D.'s placement. Plaintiffs argue that the School District's refusal to pay that money violates his right to a free and appropriate public education under the Individuals with Disabilities Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. The School District opposes the motion on the grounds that the Court lacks jurisdiction over Plaintiffs' claims; Plaintiffs have not satisfied the standards required for the issuance of injunctive relief; and Plaintiffs' claims hinge on the determination of issues pending before the Juvenile Court that require this Court's abstention under the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971).

As explained below, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order because they have not shown that the Court has jurisdiction over this case. The Court therefore does not address whether the standards for the issuance of injunctive relief are met.

I. **JURISDICTION UNDER THE IDEA**

The IDEA requires school districts receiving federal funding to provide a "free appropriate

2

public education" ("FAPE") to children with disabilities. 20 U.S.C. § 1412; *Long v. Dawson Springs Independent School Dist.*, 197 Fed. App'x 427, 432 (6th Cir. 2006). It contains a comprehensive set of procedures by which school officials, parents, and the student, when appropriate, can collaborate to create a written "individualized education program" ("IEP") that addresses the student's special needs. 20 U.S.C. § 1414. The IDEA also provides procedural safeguards to resolve disputes regarding a student's IEP. 20 U.S.C. § 1415.

The IDEA provides that any party aggrieved by the findings and decision made under its dispute resolution procedures may bring an action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). Before bringing such an action, however, the party seeking relief must have exhausted the administrative procedures available under the IDEA. 20 U.S.C. § 1415(l). This exhaustion requirement extends to all suits seeking relief available under the IDEA, even if brought under the Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Title V of the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, or other federal laws. *Id.*

Earlier this year, the Supreme Court addressed the IDEA's exhaustion of administrative procedures requirement in *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754, 197 L. Ed. 2d 46 (2017). In *Fry*, the Supreme Court held that:

> . . . §1415(l)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs in *Smith* [*v. Robinson*, 468 U.S. 992 (1984)] claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required. After

3

> all, the plaintiff could not get any relief from those procedures: A hearing officer, as just explained, would have to send her away empty-handed. And that is true even when the suit arises directly from a school's treatment of a child with a disability—and so could be said to relate in some way to her education. A school's conduct toward such a child—say, some refusal to make an accommodation—might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA. A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to § 1415(l)'s exhaustion rule because, once again, the only "relief" the IDEA makes "available" is relief for the denial of a FAPE.

*Fry*, 137 S. Ct. at 754–55. Plaintiffs' claims in this case fall squarely within § 1415(l)'s exhaustion requirement as articulated by the Supreme Court in *Fry*.

Plaintiffs bring claims under the ADA and Rehabilitation Act, in addition to the IDEA, but the gravamen of Plaintiffs' Complaint is that the School District has denied J.D. the FAPE that he is entitled to under the IDEA. (Doc. 1 at ¶ 38-48.) Plaintiffs underscore this fact in their reply memorandum, stating that "[t]he matter before the [C]ourt is that J.D., a student with severe emotional, mental health, communication and educational needs is about to be discharged from the only facility that has been identified that can meet his needs despite the fact that the Defendant is required by law to provide him with a Free Appropriate Public Education." (Doc. 10 at 6; *see also* Doc. 10 at 10 ("In order to prevail on Plaintiffs' complaint, Plaintiffs must show that Defendant GLSD owes a FAPE to J.D.").) Thus, Plaintiffs plainly assert that the relief that they seek—and what this case is all about—is the provision of a FAPE to J.D.

It is likewise undisputed that, although Plaintiffs have begun the administrative procedures under the IDEA and Ohio law, they have not exhausted them. On February 27, 2017, Plaintiffs filed a due process complaint to begin the process. The Impartial Hearing Officer has ruled on

4

Plaintiffs' motion for a "stay put" order under 20 U.S.C. § 1415(j), but has not made any final determinations regarding the due process complaint and no hearing has occurred. (Doc. 8-5.) The administrative hearing and decision are currently due by July 15, 2017. (Docs. 8-6, 8-7.)

Plaintiffs nonetheless argue that they are not required to exhaust the IDEA's administrative procedures because they seek injunctive relief unavailable under the IDEA. (Doc. 10 at 10-11.) Under § 1415(l), the exhaustion of remedies is required only when the party seeks "relief that is also available" under the IDEA. The problem with Plaintiffs' argument is that an order directing the School District to provide a FAPE "is precisely the kind of relief that the state administrative process is equipped to afford." *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 918 (6th Cir. 2000).

In *Covington*, the Sixth Circuit considered whether a special education student's claim under 42 U.S.C. § 1983 was subject to the IDEA's exhaustion of administrative procedures requirement. 205 F.3d at 915-18. The student argued he should be excepted from the exhaustion requirement because he was seeking money damages, which are unavailable under the IDEA. The Sixth Circuit rejected that argument and held that merely seeking money damages—in addition to relief available under the IDEA—is insufficient to avoid the exhaustion requirement. However, in light of the "unique circumstances" of the case, "in which the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole—proceeding through the state's administrative process would be futile and [exhaustion] is not required before the plaintiff can file suit in federal court." *Id.* at 918.

The Sixth Circuit distinguished its decision in *Covington* with its earlier decision in *Doe v. Smith*, 879 F.2d 1340 (6th Cir. 1989), where the court had held that an IDEA claim was precluded

5

by the exhaustion requirement. In *Smith*, the parents of a special needs student engaged school officials in the development of an IEP for his upcoming school year. When the school officials declined the parents' suggestion that their son enroll in a private school, the parents refused to participate further in the IEP process. They withdrew their son from the school, enrolled him in the private school at their own expense, and brought a lawsuit for failure to provide a FAPE under the IDEA. The Sixth Circuit affirmed the dismissal of their claim for lack of jurisdiction, holding that the "parents may not avoid the state administrative process through 'the unilateral act of removing their child from a public school.'" *Covington*, 205 F.3d at 918 (quoting *Smith*, 879 F.2d at 1343). To be excepted from the exhaustion requirement, the parents needed to show that "following the school system's administrative procedure would have been futile," which they had failed to do. *Id.* To the contrary, the parents sought a "more appropriate educational placement," which was the precise remedy that they could obtain through the state's administrative procedures.

Here, Plaintiffs also have not shown that the administrative process will not ultimately resolve their claims. Plaintiffs' true concern is the timing of that relief. Specifically, Plaintiffs are concerned that, due to the residency dispute between the parties, J.D. may be discharged from Pressley Ridge before the Impartial Hearing Officer enters a decision regarding his entitlement to stay there. In this regard, the Court is guided by *Doe v. Dublin City School District*, 453 Fed. App'x 606 (6th Cir. 2011), another case in which the Sixth Circuit affirmed the dismissal of a lawsuit under the IDEA for failure to exhaust administrative procedures.

In *Dublin City*, the parents of a special needs student were frustrated by the school district's response to their request for the development of an IEP. Despite a psychiatric evaluation that diagnosed the student with serious disorders, the school district initially concluded that the student was not disabled and did not require an IEP. The school district later agreed that an IEP would be

6

appropriate, but was slow to proceed with its development and implementation. The school district was so slow that, even though the parents began the process in March 2009, an IEP was not in place for their son to begin school the next fall. Upset with the delay, the parents filed suit in federal court asserting violations of the IDEA, the Rehabilitation Act, and the ADA. *Id.* at 608.

Once in the district court, the parties entered into an agreed order that required the school district to conduct an examination and prepare an IEP, if appropriate, by September 11. After the school district complied with the order and accommodated the student's needs, it moved to dismiss the lawsuit for failure to exhaust administrative procedures. *Id.* at 608. The district court granted the motion to dismiss over the parents' objection that exhaustion would have been futile. Affirming the district court, the Sixth Circuit observed that while the school district's conduct was "far from exemplary, it ha[d] not clearly failed to follow the requirements of the Act in a manner that demonstrate[d] that resort to the administrative process would have been futile." *Id.* at 609. The Sixth Circuit noted that the parents had not requested a due process hearing, which is part of the IDEA's dispute resolution process, and therefore the school district's obligation to comply with the Act's time limits had not been triggered.

Similarly, in this case, the School District has denied that it owes a FAPE to J.D., which is conduct that Plaintiffs no doubt would deem "far from exemplary." The School District has complied with the administrative process, however, and there is no reason to believe that the administrative process will ultimately prove futile. The Impartial Hearing Officer has already ruled that the "stay put" provision applies. (Doc. 8-5.) Therefore, if the Juvenile Court finds that J.D. remains a resident of the School District, the School District will be required to maintain J.D.'s placement at Pressley Ridge until the dispute regarding what constitutes a FAPE for him is resolved. If Plaintiffs seek more immediate relief regarding the residency issue, they should do so

in state court, where that issue is pending. In sum, because Plaintiffs seek relief available under the IDEA and there has been no showing that they cannot obtain that relief through the IDEA's administrative procedures, the Court must deny Plaintiffs' Motion for Temporary Restraining Order.

II. **CONCLUSION**

As discussed above, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order (Doc. 4) for lack of jurisdiction. Defendants also filed a Motion to Dismiss (Doc. 8) the Complaint on jurisdictional grounds. Before ruling on that Motion, the Court will provide Plaintiffs an opportunity to more fully address the jurisdictional issues identified in this Order and any other arguments in the Motion to Dismiss. The Court therefore **GRANTS** Plaintiffs' Motion for Leave to File a Brief in Opposition to Defendants' Motion to Dismiss (Doc. 9). Plaintiffs may file a memorandum in response to the Motion to Dismiss within 21 days of its filing, or by May 22, 2017. Defendants may file a reply to Plaintiffs' memorandum within 14 days of its filing, as permitted by S.D. Ohio Civ. Rule 7.2(a)(2).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, May 5, 2017.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE